**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RIVERBEND CAPITAL, LLC** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 09-3599** |
| | * | |
| **ESSEX INSURANCE COMPANY** | * | **SECTION "L"(4)** |

**ORDER & REASONS**

Before the Court is Defendant's Motion for Partial Summary Judgment on the basis of coverage (Rec. Doc. No. 58) and Defendant's Motion for Partial Summary Judgment on the issue of bad faith (Rec. Doc. No. 59). The Court has reviewed the memoranda and applicable and is now ready to rule. For the following reasons, both motions are denied.

**I. BACKGROUND AND PRESENT MOTIONS**

This case arises out of damages sustained by an apartment complex owned by Plaintiff Riverbend Capital, LLC. At all relevant times, Plaintiff was the owner of 4400 Gawain Street in New Orleans, Louisiana, and Defendant Essex Insurance Co. was the insurer of that property. According to the insurance policy issued by Defendant to Plaintiff, "vandalism" is a cause of loss for which there is coverage. At the same time, the policy states that it does not cover "loss or damage . . . caused by or resulting from theft," although it carves out an exception to this exclusion. That exception provides coverage for "building damage caused by the breaking in or exiting of burglars."

Plaintiff alleges that on or about April 16, 2008, it discovered that its property had sustained damage due to vandalism and that it reported its loss to Defendant. Plaintiff avers that Defendant retained Apple Adjusters, Inc. to adjust the claim and that the property was inspected

on July 1, 2008. According to Plaintiff, Defendant provided an estimate of loss that was inadequate under the policy, and Defendant refused to re-evaluate its estimate. In April 2009, Plaintiff filed suit against Defendant, seeking to recover the amount it alleges is due under the insurance policy, as well as various extra-contractual forms of relief under the applicable Louisiana statutes. In its answer, Defendant denied liability, asserting the defense that the loss was due to theft and that there was no coverage for the damages Plaintiff sustained.

On September 22, 2010, Defendant filed a Motion for Partial Summary Judgment on the basis of coverage (Rec. Doc. No. 58) and a Motion for Partial Summary Judgment on the issue of bad faith (Rec. Doc. No. 59). Relying on the recent Fifth Circuit decision in *Certain Underwriters at Lloyd's, London v. Law*, 570 F.3d 574 (5th Cir. 2009), Defendant asserts that it is entitled to judgment as a matter of law because the policy does not cover damage sustained in the course of theft. Defendant also asserts that with respect to the extra-contractual forms of relief, it is entitled to summary judgment insofar as it had a reasonable basis upon which to question the availability of coverage.

Plaintiff opposes both motions. With respect to coverage, Plaintiff asserts that Defendant's reliance on *Law* is misplaced and that several intermediate appellate state court decisions in Louisiana indicate that the policy covers property damage sustained in the course of theft. Plaintiff also argues that in any event, there is a question of fact as to whether all of the damages at issue were caused by vandalism or by theft and that this precludes summary judgment with regard to both the issue of coverage and the issue of bad faith.

## II. LAW AND ANALYSIS

### A. Standard of Review

2

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B. *Erie* Analysis**

A federal court sitting in diversity must apply substantive state law. *See Erie R.R. Co. v. Thompson*, 304 U.S. 64, 78 (1938). As a general matter, in order "[t]o determine state law, federal courts . . . look to the final decisions of the state's highest court." *Am. Int'l Specialty*

3

*Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (citing *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). If the state's highest court has not rendered a decision "on the issue at hand," then "it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." *Id.* This inquiry is sometimes referred to as making an "*Erie* guess." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003).

In *Erie* analysis, "[t]he decision of an intermediate appellate state court . . . does not necessarily control a federal court's determination of the applicable state law." *Green v. Walker*, 910 F.2d 291, 294 (5th Cir. 1990). A federal court is "bound by an intermediate state appellate court decision only when [it] remain[s] unconvinced by other . . . data that the highest court of the state would decide otherwise." *FDIC v. Abraham*, 137 F.3d 264, 267 (5th Cir. 1998) (internal citations and quotation marks omitted). Thus, the decision of an intermediate appellate state court "guides, but is not necessarily controlling" on a federal court, *Wood v. Armco, Inc.*, 814 F.2d 211, 213 n.5 (5th Cir. 1987), and "*Erie* 'does not command blind allegiance to [any] case on all fours with the case before the court.'" *Green*, 910 F.2d at 294 (quoting *Shelp v. Nat'l Sur. Corp.*, 333 F.2d 431, 439 (5th Cir. 1964)).

This directive has special relevance in Louisiana, where "the primary sources of law are its constitution, codes, and statutes and the decisions of its courts are secondary sources of law until and unless the numbers and unanimity of such decision achieve the force of law through the Civil Law doctrine of jurisprudence constante." *FDIC*, 137 F.3d at 268; *accord In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007); *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999); *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 776 (5th Cir. 1997) ("In Louisiana [the *Erie*] obligation has special dimensions

4

because of [its] unique Civilian tradition."). Thus, in the unusual situation where an intermediate

appellate state court's decision deviates from the commands of the Civil Code, a federal court

must conclude that it is not bound by that decision. At its most fundamental level, "the *Erie*

obligation [of a federal court applying Louisiana law] is to the [Civil] Code, the 'solemn

expression of legislative will.'" *Shelp*, 333 F.3d 439 (quoting La. Civ. Code art. 2).

## C. The Scope of Coverage

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should

be construed using the general rules of interpretation of contracts set forth in the Civil Code."

*Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 741 (La. 1994) (citations omitted). Thus,

"[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary

and generally prevailing meaning, unless the words have acquired a technical meaning."

*Peterson v. Schimek*, 729 So.2d 1024, 1028 (La. 1999) (citing La. Civ. Code art. 2047). In

addition, "[t]he policy should be construed as a whole and one portion thereof should not be

construed separately at the expense of disregarding another." *Crabtree*, 632 So.2d at 741 (citing

La. Civ. Code art. 2050); *see also* La. Rev. Stat. Ann. § 22:881 ("Every insurance contract shall

be construed according to the entirety of its terms and conditions as set forth in the policy . . . .");

*cf.* La. Civ. Code art. 2049 ("A provision susceptible of different meanings must be interpreted

with a meaning that renders it effective and not that renders it ineffective.").

Here, the policy provides coverage for "vandalism." Def.'s Ex. 1 pt. 2 at 12 (Rec. Doc.

No. 58-3). The policy defines "vandalism" as "willful and malicious damage to, or destruction

of, the described property." *Id.* The policy also contains an exclusion: it does not cover "loss or

damage . . . caused by or resulting from theft." *Id.* And this exclusion contains an exception,

which can be referred to as the ingress/egress exception: it provides coverage for "building

5

damage caused by the breaking in or exiting of burglars." *Id.* The task at hand is to interpret these three provisions – the vandalism coverage, the theft exclusion, and the ingress/egress exception – to give effect to each.

To begin, it should be noted that the ordinary meaning of the term "vandalism" could encompass any theft-related damage. *See, e.g.*, Black's Law Dictionary (8th ed. 2004) (defining vandalism as the "willful or ignorant destruction of public or private property"). The policy's definition of "vandalism" – as "willful and malicious damage to . . . property" – also lends itself to the conclusion that "vandalism" encompasses any theft-related property damage. To construe the term "vandalism" in such a way, however, would be to render the theft exclusion meaningless. Indeed, if all theft-related damage falls within the vandalism coverage, then there is, in effect, no exclusion for "damage . . . caused by or resulting from theft." Thus, the challenge is to explore whether both terms can be interpreted as to give meaning to both.

The Louisiana Supreme Court's decision in *Ducote v. United States Fidelity & Guarantee Co.*, 130 So.2d 649 (La. 1961), provides a starting point upon which to do so. In that case, the Court concluded that an act of vandalism is one that is undertaken with "an actual purpose or design to do injury." *Id.* at 652. The mental state thus is one that is above negligence or recklessness. In addition, the Court indicated that the intent to injure must be with respect to the property rather than the owner of the property. *See id.* at 651-52. Theft, in contrast, is an act that is, in some ways, undertaken with the intent to harm the owner – it is the taking of property with the "intent to permanently deprive the owner of the [property]." *Id.* at 651; *accord* La. Rev. Stat. Ann. § 14:67 ("An intent to deprive the other permanently of whatever may be the subject of the . . . taking is essential [to the crime of theft].").

With respect to the policy at issue, then, property damage caused by "vandalism" and

6

property damage caused by "theft" can be further defined to give effect to both the vandalism coverage and the theft exclusion. Property damage caused by vandalism – and thus property damage that falls within the vandalism coverage – is property that is damaged by an act undertaken with the intent to injure that property and without the intent to steal. In contrast, property damage caused by theft – and thus property damage subject to the theft exclusion – is property damaged by an act undertaken with the intent to injure the property and also with the intent to steal.

Some courts have provided a broader construction of the vandalism coverage provision – and a correspondingly narrower construction of the theft exclusion. For instance, in a case on which Plaintiff heavily relies, the Louisiana Court of Appeal concludes, in one part of its opinion, that the vandalism coverage includes "damage caused prior to or concurrently with a theft." *Haas v. Audubon Indem. Co.*, 722 So.2d 1022, 1027 (La. Ct. App. 1998). As noted above, however, such a broad interpretation of the vandalism coverage – one that encompasses all theft-related damages – essentially renders the theft exclusion meaningless, and it is thus inconsistent with the Louisiana Civil Code's requirement that each provision be given effect. *See* La. Civ. Code art. 2050.

In a subsequent paragraph, the *Haas* court appears to retreat from that conclusion and holds instead that the theft exclusion encompasses only "the stolen materials." *Haas*, 722 So.2d at 1027. This may initially appear as a reasonable interpretation of the phrase "loss or damage . . . caused by or resulting from theft." In fact, it would be a reasonable interpretation if the only provisions at issue were the vandalism coverage provision and the theft exclusion. But where, as here, one must take into account the ingress/egress exception to the theft exclusion, it is clear that such a narrow understanding of the theft exclusion is also untenable.

7

As previously noted, while the policy does not cover "loss or damage . . . caused by or resulting from theft," it carves out an exception to the theft exclusion for "building damage caused by the breaking in or exiting of burglars." Def.'s Ex. 1 pt. 2 at 12 (Rec. Doc. No. 58-3). If "loss or damage . . . caused by or resulting from theft" means only stolen property, then it would mean that "building damage caused by the breaking in or exiting of burglars" is part of stolen property. After all, to except something from another is to "take or leave out" something from which it originally belonged. Oxford English Dictionary (2d ed.1989) (defining "except").

To say that building damage is part of stolen property clearly does not make sense, however. It constitutes a "strained" interpretation of the theft exclusion and ingress/egress exception and "achieve[s] an absurd conclusion." *Reynolds v. Select Props., Ltd.*, 634 So.2d 1180, 1193 (La. 1994). To construe the theft exclusion to encompass only "the materials carried away from the building," *Haas*, 722 So.2d at 1027, is thus inconsistent with the Civil Code's requirement that a contract must be interpreted "to give *compatible* meaning to *all* clauses." *Farrell v. Hodges Stock Yards, Inc.*, 343 So.2d 1364, 1369 (La. 1977) (citing former La. Civ. Code art. 1955, now re-codified as La. Civ. Code art. 2050) (emphasis added).

Notwithstanding the absurdity that follows the conclusion in *Haas*, Plaintiff argues that this Court has no choice but to find itself bound by *Haas* and by two other decisions that appear to reach the same conclusion as *Haas. See Sharplin v. Cas. Reciprocal Exchange*, 628 So.2d 217, 220 (La. Ct. App. 1993); *Sterling v. Audubon Ins. Co.*, 452 So.2d 709, 716 (La. Ct. App. 1984). Plaintiff appears to provide two reasons for this contention. First, Plaintiff stresses that these decisions interpreted identical or substantially similar policy language. Second, Plaintiff points out that there appears to be no other Louisiana cases interpreting such policy language. While these two observations appear to be correct, neither can take Plaintiff as far as it seeks.

It remains in this case "that neither the Code articles governing contractual interpretation nor their interpretation by the Louisiana Supreme Court leaves any room for the approach advocated by [Plaintiff], which ignores the clear legal precept under Louisiana law that courts must consider all language in a policy to determine its meaning." *Am. Int'l Specialty Lines Ins. Co.*, 352 F.3d at 269. As noted above, the mere fact that a case is "on all fours with the case before the court" does not require this Court's "blind allegiance" to it. *Shelp*, 333 F.2d at 439. The Civil Code, including its rules for contract interpretation, is the "fountainhead" of Louisiana law, *Elkins v. Townsend*, 296 F.2d 172, 180 (5th Cir. 1961), and it is that "to which our *Erie* obligation applies," *In re Whitaker Constr. Co., Inc.*, 439 F.3d 212, 222 (5th Cir. 2006).[1]

Similarly, the mere fact that there appear to be no other Louisiana cases interpreting this similar language does not change the fact that the decisions on which Plaintiff relies are inconsistent with the rules of contract interpretation set forth in the Civil Code. And the absence of other Louisiana cases does not require this Court to be bound by these decisions. After all, jurisprudence is, as a general matter, merely a "persuasive or secondary source[] of law." La. Civ. Code art. 1 cmt. b. While case law may in some ways be "invaluable," *Ardoin v. Hartford Accident & Indem. Co.*, 360 So.2d 1331, 1334 (La. 1978), it is clear that insofar as a judicial decision conflicts with the Code, it loses its persuasive authority and by itself cannot alter the requirement that a court must apply Louisiana legislation "first and foremost." *Chevron USA, Inc. v. Vermilion Parish Sch. Bd.*, 377 F.3d 459, 462 (5th Cir. 2004).

The inconsistency between the analysis in *Haas* and the Civil Code's rules for contract

---

[1] Moreover, it is doubtful that these decisions "approach the numerosity and unanimity of decisions needed to rise to the level of jurisprudence constante that *might* otherwise warrant [Plaintiff's] insistence that these intermediate appellate court decisions bind our decision in this case." *Am. Int'l Specialty Lines Ins. Co.*, 352 F.3d at 265 (emphasis in original).

interpretation is sufficient for this Court to conclude that this is the unusual case where the decision of an intermediate state appellate court should not be considered either binding or persuasive. Another "data" point that supports this conclusion, *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940), is the Fifth Circuit's recent decision in *Certain Underwriters at Lloyd's, London v. Law*, 570 F.3d 574 (5th Cir. 2009). Like the courts of Louisiana, the federal courts in the Fifth Circuit appear to have had little occasion to consider the policy language at issue, and *Law* seems to be the first case in the Fifth Circuit to do so. *Id.* at 578 ("Consideration of the pertinent policy provisions at issue in this case appears to be one of first impression in Texas and in this Circuit."). In that case, the Fifth Circuit interpreted policy language that is identical to the one at issue in this case, *see id.* at 576, and it reached a conclusion that is the same as the one reached here, *see id.* at 578-79 (concluding that "[d]amage done for no purpose other than to destroy property for destruction's sake" is covered and that "incidental damage done [to property] in furtherance of thievery falls within [the theft exclusion]").[2]

   In its brief, Plaintiff argues that it would be inappropriate for this Court to find any

---

[2] One point that is worth clarifying concerns the Fifth Circuit's rejection of the argument that "any damage which is excessive and unnecessary to accomplish a theft, even if in furtherance of it, is vandalism." *Law*, 570 F.3d at 579. It is true that under the conclusion reached here and in *Law*, damage that is done with the intent to steal generally falls within the theft exclusion and that intent is the touchstone of the analysis. But this does not mean that the degree of damage that is inflicted is always irrelevant. Indeed, the degree and pattern of damage that is created can be probative of the intent accompanying the act of destruction. Thus, a fact-finder can infer from the fact that a specific damage was unnecessary to effectuate a theft that such damage was done for its own sake (and thus vandalism) and not with the intent to steal. In other words, while the key is "the purpose for which the damage at issue is done," *id.* at 578, the degree of damage that is inflicted in any one part of a property can be relevant in determining that purpose. Language in the Fifth Circuit's decision can be taken to mean that the degree of damage is always irrelevant in the fact-finding process. *See id.* But it would be a mistake to do so. The Court of Appeals was merely emphasizing that it is the purpose behind, and not the degree of, damage that is the lynchpin to the policy.

significance in *Law*. While Plaintiff is certainly correct in arguing that *Law* is not binding on this Court because it applies Texas law, *see id.* at 577, Plaintiff reaches too far in contending that *Law* has no persuasive value. This is because the rules of contract interpretation under Louisiana law and Texas law coincide in important ways. For instance, Louisiana and Texas law both provide that in general, words are to be given their original meaning. *Compare* La. Civ. Code art. 2047 *with Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). In addition, both Louisiana and Texas law specify that contractual provisions are to be interpreted in light of one another so that each provision is given effect. *Compare* La. Civ. Code 2050 *with R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980).

To the extent that the rules of contractual interpretation – and thus the rules of decision themselves – are the same, cases interpreting identical policy language can certainly be of persuasive value. *See Consol. Companies, Inc. v. Lexington Ins. Co.*, __ F.3d __, 2010 WL 3223137, at *9 (5th Cir. Aug. 17, 2010); *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 404 (5th Cir. 1995); *Burlington Res., Inc. v. United Nat'l Ins. Co.*, 481 F. Supp. 2d 567, 570 (E.D. La. 2007) (Fallon, J.). The Louisiana Supreme Court itself has referred to decisions rendered in other states in interpreting insurance policies under Louisiana law, *see, e.g.*, *Ducote*, 130 So.2d at 651 & nn.8-10 (citing with approval Virginia, Minnesota, Massachusetts, New Mexico, New York, and Illinois case law), while at the same time making it clear that like any other bodies of jurisprudence, these decisions are "at most" of "persuasive" value, *see id.* at 652 (declining to follow Alabama and District of Columbia case law). Thus, even though *Law* is a case that arose under Texas law, it has some instructive value here because the rules of contract interpretation in Louisiana and Texas are congruent and the policy language at issue are identical.

11

In sum, the policy at issue must be construed in the following way. The vandalism coverage extends to all property damaged with the intention to injure it, but not with the intent to steal. The theft exclusion encompasses property damaged with the intent to injure it and with the intent to steal. The exception that is carved out of the theft exclusion -- the ingress/egress exception -- allows recovery for property that was damaged with the intent to injure it and with the intent to steal, but that occurred only because of burglars breaking into or exiting out of the property. This interpretation gives effect to all three provisions at issue and thus fulfills the requirement that "[a] policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another." *Crabtree*, 632 So.2d at 741 (citing La. Civ. Code art. 2050); *see also* La. Rev. Stat. Ann. § 22:881.[3]

## D. The Availability of Coverage

In its brief in support of its motion for summary judgment, Defendant asserts that it is entitled to judgment as a matter of law because there was no coverage for the damage claimed by Plaintiff. To prevail on a motion for summary judgment, however, Defendant must show that there is no genuine issue of material fact as to the type of damage that Plaintiff sustained such that coverage was wholly unavailable. Defendant cannot meet this high bar. In this case, whether property damage was due to vandalism or due theft turns on the intent of the individuals who damaged the property. *See Law*, 570 F.3d at 578; *Ducote*, 130 So.2d at 651-52. But "a

---

[3] Because there is no other interpretation consistent with the rules of construction set forth in the Civil Code, and because Plaintiff urges no other interpretation, there is no ambiguity to be resolved against the insurer. *See* La Civ. Code art. 2056 (providing that "a provision must be interpreted against the party who furnished its text," but only "[i]n case of doubt that cannot be otherwise resolved"); *Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 194 (La. 2008) ("[W]hen there is ambiguity in a policy of insurance, the ambiguity should be construed in favor of coverage, but only if the ambiguous policy is susceptible to two or more reasonable interpretations.").

determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ – a function traditionally left to the jury." 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2730 (3d ed. 2004). Thus, "summary judgment often will be an inappropriate means of resolving an issue of this character." *Id.*

Unlike the parties in *Law*, which did not dispute the facts, *see* 570 F.3d at 575-76, Plaintiff and Defendant have proffered conflicting evidence on the type of damage that Plaintiff's property sustained. On the one hand, the claims adjuster assigned to investigate the loss, Ms. Pamela Dyer, has stated that it was "clearly evident from the beginning of the inspection . . . to the end" that "the damages done to the site [were made with] an intent of stealing the copper." Def.'s Ex. 5 at 2-3 (Rec. Doc. No. 59-6). She also has stated that the photos taken of the property "reflect an intent to steal the copper." *Id.* at 4. On the other hand, Plaintiff's managing partner, Mr. Michael Dazet, has provided testimony indicating that property may have been damaged without the intent to steal. For instance, Mr. Dazet states that during the inspection, he observed cabinetry and toilets "smashed" and mailboxes "destroyed." Pl.'s Ex. A at 8, 17 (Rec. Doc. No. 71-2). He also states that "some units were just destroyed like somebody went in and just got mad at it." *Id.* at 8.

This conflicting evidence clearly indicates that there is a genuine issue of material fact regarding the extent of damage that was done with the intent to steal and the extent of damage what was done without the intent to steal. Both types of damage can be inflicted in the course of a burglary. *See Law*, 570 F.3d at 579 ("[W]e should not be misunderstood to say that vandalism can never occur during a theft and vice versa. These are not per se mutually exclusive events."). While Defendant appears to have taken the position that all of the damage for which it did not

tender payment was inflicted with the intent to steal, Plaintiff has pointed to evidence that, if found credible, would indicate that at least some of the property that was damaged was done only for the sake of destruction. Under these circumstances, it is for the jury to review the conflicting evidence and to determine for each instance of damage whether it was done with or without the intent to steal. Defendant's motion for summary judgment on the basis of the lack of coverage must be denied.

### E. Extra-contractual Relief

In addition to making a claim for recovery under the policy, Plaintiff is seeking various extra-contractual forms of relief. Under the applicable Louisiana statutes, an insured can recover damages, attorney's fees, and costs for behavior that it shows is arbitrary and capricious – such as an insurer's failure to pay or to make a written offer of settlement within a certain period. *See* La. Rev. Stat. Ann. §§ 22:1892(B)(1), 22:1973(B)(5)-(6). An insured can also recover extra-contractual relief for other types of behavior that need not to be shown to be arbitrary and capricious – such as a failure to initiate loss adjustment within a certain time period, *see id.* § 22:1892(A)(3), or the misrepresentation of relevant facts and policy provisions, *see id.* § 22:1973(B)(1). Plaintiff has alleged in its Complaint that Defendant engaged in all of these types of conduct. *See* Pl.'s Am. Compl. para. XIII, XIX-XX (Rec. Doc. No. 15). In its brief in support of its motion for partial summary judgment, Defendant asserts that is entitled to partial summary judgment insofar as it had a reasonable basis to dispute the applicability of coverage. In other words, Defendant argues that at least with regard to the behavior that must be found to be arbitrary or capricious in order to support the recovery of extra-contractual relief, it is entitled to judgment as a matter of law.

With respect to whether a failure to pay can be found to have been "arbitrary, capricious,

14

or without probable cause," the Louisiana Supreme Court has drawn the distinction between amounts that the insurer does not dispute and those that it does dispute. *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114 (La. 2008). An insurer is liable for any amount for which it does not dispute, for "'there can be no good reason' – or no probable cause – for withholding [such an] amount." *Id.* (quoting *Hammett v. Fire Ass'n of Phila.*, 160 So. 302, 304-305 (La. 1935)). Meanwhile an insurer is liable for any amount that it does dispute, but for which it lacks a "substantial, reasonable, and legitimate" basis upon which to question the causation or extent of the loss. *Id.* at 1116; *see also id.* 1114-15. Whether such a basis exists depends on the facts known to the insurer at the relevant time. *Id.* at 1114.

In this case, Defendant asserts that it had reasonable basis upon which to question whether there was coverage – in other words, it had reason to believe that all of the property damage was "caused by or resulting from theft." In light of the foregoing, however, it is clear that Defendant cannot show that there is no genuine issue of material fact as to whether it had a reasonable basis to believe that the property damage was only due to the theft of copper. To be sure, there is evidence that points in that direction, but Plaintiff has proffered conflicting evidence on that issue. Viewed in the light most favorable to Plaintiff, that evidence indicates that at least with respect to some of the damage to the property, Defendant may have had no reasonable basis upon which to believe that the damage was due to the theft of copper. For instance, to the extent that damage was inflicted on items that do not contain copper or that were not in the vicinity of items containing copper-- such as mailboxes and toilets -- it may be beyond the bounds of reasonableness to conclude that such damage was caused with the intent to steal copper. Under these circumstances, there is a genuine issue of material fact as to whether Defendant had a reasonable basis upon which to conclude that coverage was unavailable as to all

of the damages that Plaintiff's property sustained. Accordingly, Defendant's motion for summary judgment must be denied.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment on the basis of coverage (Rec. Doc. No. 58) and Defendant's Motion for Partial Summary Judgment on the issue of bad faith (Rec. Doc. No. 59) are hereby **DENIED**.

New Orleans, Louisiana, this 5th day of October, 2010.

UNITED STATES DISTRICT JUDGE